UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PEDRO DOMINGUEZ,** | Civil Action No. 19-8970 (SRC) |
| Petitioner, | |
| v. | OPINION |
| **BRUCE DAVIS, et al.,** | |
| Respondents. | |

**CHESLER**, District Judge:

Presently before the Court is the amended habeas petition of Petitioner Pedro Dominguez brought pursuant to 28 U.S.C. § 2254 (ECF No. 7). Following an order to answer, Respondents filed a response to the petition (ECF No. 17), to which Petitioner replied. (ECF No. 18). For the following reasons, Petitioner's habeas petition is denied, and Petitioner is denied a certificate of appealability.

**I.  BACKGROUND**

In affirming Petitioner's conviction, the Superior Court of New Jersey – Appellate Division summarized the relevant evidence presented at trial as follows:

> The record reveals that late on the night of August 21, 2010, cousins Adam and Marvin Juarez were leaving an Elizabeth bar when approached by a group of four Hispanic males in a well-lit area. Adam later testified that "[o]ne of them put a knife to me on the right side," and took his cell phone and $40 in cash; he also testified that the men who approached him also "grabbed [his] cousin." Marvin similarly testified that "one of them grabbed my hand and put a knife to my neck," while another "went through [his] pockets and took" his house and car keys, approximately $60 in cash, and bank and identification cards.  Marvin corroborated Adam's testimony, stating that while he was being robbed, he was aware "they were

>grabbing [Adam] too." Both Adam and Marvin testified that after they were robbed, the four individuals "told us that if we went to the police or did something the next time they . . . were going to kill us." The four then walked off in a group.
>
>[Petitioner and his co-defendants] were quickly apprehended near the scene of the crime; a fourth suspect fled. A search of [Petitioner's co-defendants' uncovered a cell phone[,] a set of keys belonging to the victims, and a . . . folding knife.
>
>Withing a half hour of the crimes, the Juarez cousins were driven in a marked patrol car to a nearby parking lot to identify the three detained suspects. When the patrol car containing the victims arrived, [Petitioner and his co-defendants] were surrounded by four police officers; [one of Petitioner's co-defendants] was handcuffed. Upon viewing the suspects, the victims quickly identified [them] as their attackers. Each defendant was then brought forward by a uniformed officer where, illuminated by patrol car spotlights, they were individually observed by the victims from a distance of approximately twenty feet. While each suspect stood with his hands behind his back, Officer Belon asked the victims, who remained in the back of the patrol car, if the person brought forward was one of their robbers. The victims affirmatively identified the three suspects and explained the role each played in the robberies. Thereafter the victims were driven to the police station where they provided handwritten Spanish-language accounts of the robbery.
>
>Following a single jury trial involving all charges against [Petitioner and his co-defendants], Petitioner [was] convicted of: two counts of first degree armed robbery[,] one count of third-degree possession of a weapon for an unlawful purpose[,] and one count of fourth-degree possession of a weapon under circumstances not manifestly appropriate for lawful use[.]
>
>[Petitioner was] sentenced on October 5, 2012. The trial judge merged the[] weapons convictions into the robbery convictions and imposed on [Petitioner consecutive] fifteen- and thirteen-year prison terms . . . subject to eighty-five percent parole disqualifiers pursuant to the No Early Release Act[.]

(Document 3 attached to ECF No. 17 at 3-5).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." The petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, --- U.S. ---, ---,132 S. Ct. 2148, 2151 (2012). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for the purposes of the statute where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, --- U.S. ---, ---, 125 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute

that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B. Analysis**

**1. Petitioner's identification related claim**

In his first claim, Petitioner challenges the trial court's admission of the victim's identification of Petitioner, arguing that the procedures used in the initial identification were impermissibly suggestive, and the trial court should not have ended the hearing on the reliability of the identifications prematurely. Under applicable federal law, an out of court identification will only be inadmissible where that identification denies Due Process insomuch as it is the result of police procedure which was "unnecessarily suggestive and . . . [that suggestive procedure] create[d] a substantial risk of misidentification." *United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006); *see also Manson v. Brathwaite*, 432 U.S. 98, 116 (1977); *United States v. Anthony*, 458 F. App'x 215, 218 (3d Cir. 2012). Even where suggestive procedures are used by the police, an identification will still prove admissible where the identification itself was reliable as "reliability is the linchpin in determining the admissibility of identification testimony . . . The factors to be considered [in determining whether an identification is reliable enough to be admitted] include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Anthony*, 458 F. App'x at 218 (quoting *Manson*, 432 U.S. at 114). Where a court weighs these

factors and concludes that an out of court identification was reliable notwithstanding unduly suggestive police procedures, the admission of the identification at trial will not violate clearly established federal law. *Id.*

On direct appeal, the Appellate Division rejected Petitioner's claim that the admission of the victim's post-show-up identification of Petitioner was both unreliable and the product of suggestive procedure, finding "abundant support" in the trial record for the conclusion that the identification in this case was reliable and therefore admissible regardless of any suggestive procedure.[1] (Document 3 attached to ECF No. 17 at 12). Specifically, the Appellate Division noted that the

> victims made their identifications shortly after the robberies and, as suggested by the testimony of Officer Belon [at the hearing on the identification issue] which the trial judge found credible – without any undue pressure. Further the initial description provided by the victims of their attackers matched the general description of the suspects detained [at the show-up presentation]. There is no evidence to suggest the victims identified [Petitioner and his co-defendants] out of any exigency other than a desire to tell the truth. According to Officer Belon's testimony, upon viewing the suspects in the parking lot, the [victims] "pretty much spontaneously" declared in Spanish, "that's them," and "[t]hey seemed a hundred percent sure" and "very adamant, very confident about their statements."

(*Id.*). Based on this factual background, the Appellate Division found the identifications admissible, and found no error in the trial judge's decision to terminate the hearing on the identifications following the testimony of Officer Belon, as any further testimony – all of which

---

[1] The trial judge also found that the admission in this case was not the product of suggestive procedure, but the Appellate Division did not rest it's decision – the last reasoned state decision on the issue in this case – on an evaluation of the suggestiveness of the show-up used in this case. (Document 3 attached to ECF No. 17 at 9-13).

would have come from witnesses presented by the State and not the defense – would only have bolstered the testimony the court had already heard.

Having reviewed the record of this matter, it is clear that the Appellate Division's factual conclusions are well supported, and that there was ample evidence that, regardless of suggestive procedures, the identifications in this case were inherently reliable. The victims had sufficient opportunity to perceive their assailants, including Petitioner during the robbery, and again during the identification at the parking lot show-up, the victims made their identifications "pretty much spontaneously" and with considerable confidence, and this identification occurred in short order after the robbery had taken place. (*Id.*). All of these factors indicate that the identifications were reliable notwithstanding any suggestibility inherent in the show-up procedure used in this case, and the Appellate Division's finding that the identification was reliable and therefore admissible was neither contrary to nor involved an unreasonable application of federal law.

Likewise, that the trial judge terminated the identification hearing after a single witness – the police officer involved in the show-up – presents no basis for relief. Once the trial court found that witness credible and found that his testimony clearly indicated that the identifications in this case were sufficiently reliable to be admissible, there is no likelihood that his decision would have been different had he heard from further state witnesses – the only witnesses who could have provided relevant testimony and the only witnesses on offer for the identification hearing. As there is no likelihood that the result of the trial court's ruling would have been different had the hearing not been terminated, and as the trial record clearly indicates that the identifications in this case were in any event reliable and therefore admissible, the trial judge's decision to terminate the hearing after one witness had both testified on direct and been cross-examined, which was upheld by the Appellate Division, was at worst harmless. *Fry v. Piller*, 551 U.S. 112, 116 (2007); *see*

*also Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993). Petitioner's identification related claim therefore provides no basis for habeas relief.

## 2. Petitioner's ineffective assistance of counsel claims

In his remaining claims, Petitioner asserts that his trial counsel provided ineffective assistance of counsel in his handling of Petitioner's defense, chiefly in counsel's purported failure to properly advise Petitioner as to his right to testify on his own behalf. The standard applicable to Petitioner's claims of ineffective assistance of counsel is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687*; see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's

> defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

In his chief ineffective assistance claim, Petitioner contends that his trial counsel proved ineffective in advising him as to his right to testify on his own behalf. The Appellate Division rejected this claim, noting that Petitioner had been provided ample opportunity to speak with counsel and decide whether or not to testify, that the trial court had conducted a colloquy in which Petitioner confirmed both that he understood that the decision was entirely his to make and that he did not wish to testify as he "did not feel good," and that Petitioner's comment about not feeling well was placed in its proper context by a form Petitioner had signed which confirmed that, after discussing the matter with counsel, he had decided not to testify on his own behalf. (Document 11 attached to ECF No. 17 at 7-8). Having reviewed the record, including the colloquy, it is clear that counsel requested and obtained extra time to discuss Petitioner's right to testify prior to the above colloquy and "urged" Petitioner to testify, that Petitioner chose not to testify knowing that he alone had to make that decision, and that after stating that he "did not feel good," Petitioner signed a form which specifically stated that his intention was to knowingly choose not to testify.

(*Id.*). All of these facts, taken together, coupled with the fact that Petitioner does not appear to have asked or sought further discussion with counsel after he stated he did not feel good but instead signed the form, clearly indicate that Petitioner was advised of his rights and chose not to take the stand of his own accord, as the record suggests that counsel wanted him to testify, but Petitioner chose not to do so. In light of Petitioner's own statements to the Court, and Petitioner's decision to sign the form which contextualizes his statement that he did not feel good to mean that he did not wish to testify, it is clear that Petitioner, and not counsel, was responsible for the failure of Petitioner to testify at his own trial, and Petitioner has failed to show that the outcome of his trial would have been different had counsel spoken with him again after he stated he did not feel well. As Petitioner clearly expressed his intention not to testify through the colloquy and form after discussing the matter with counsel, Petitioner has failed to show that counsel was ineffective in not resuming discussions, and has in any event failed to show any prejudice. Petitioner's ineffective assistance of counsel claim therefore fails to present any valid basis for habeas relief as the Appellate Division's rejection of this claim was neither contrary to nor an unreasonable application of *Strickland*.

      Petitioner next contends that his trial counsel proved ineffective in failing to object to certain comments made by the prosecution during trial. Specifically, Petitioner believes counsel should have objected to comments by the prosecutor to the effect that people should be able walk home without threat of a knife to his neck, that Petitioner and his co-defendants failed to explain how they had come into possession of the victim's phone, comments comparing the victim and the prosecutor's body size and alcohol tolerance to suggest that the victim was not so inebriated to make a mistaken identification, a statement suggesting the lack of objections from the prosecution indicated transparency in the state's case, a reference to a Malcolm Gladwell book which was not

part of the case, and a hypothetical suggestion that the victim, at knife point, feared that he might be killed not drawn directly from the witness's testimony.  Even putting aside the fact that this ineffective assistance claim was deemed procedurally barred by the Appellate Division and assuming that Petitioner could overcome that bar, Petitioner's summation related claim is without merit.

Generally, a prosecutor's alleged misconduct during summation will only warrant relief - under either the state or federal standard – where those comments so infect the petitioner's trial that they denied him his right to a fair trial.  *See, e.g., Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Copenhefer v. Horn*, 696 F.3d 377, 392 n. 5 (3d Cir. 2012); *State v. Timmendequas*, 161 N.J. 515, 575 (1999).  This Court need not guess whether the state courts would have sustained a motion for a new trial based on the prosecutor's comments regarding how the defendants acquired the phone or the reference to the Gladwell book – although the Appellate Division on direct appeal found both arguments at least arguably improper, it concluded that neither comment denied Petitioner a fair trial.  (Document 3 attached to ECF No. 17 at 14-16).  Having reviewed the record of this matter, and in light of the strong evidence of Petitioner's guilt including eye witness identifications made by the victims less than an hour after the robbery and the fact that Petitioner and his co-defendants possessed at least one knife and one of the victim's phones when apprehended, this Court concludes that any motion challenging the remaining comments would have been equally meritless – none of the comments, even assuming *arguendo* they went beyond fair comment or response to the summations of defense counsel, were so severe or prejudicial that they had the capacity to render Petitioner's trial unfair.  As the prosecutor's comments did not have the capacity to deny Petitioner a fundamentally fair trial, any motion seeking a mistrial or the like premised on those comments would have succeeded, and Petitioner was not prejudiced by

counsel's failure to object to them during the State's summation. *See, e.g., Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) (counsel cannot be ineffective in failing to raise a meritless motion); *see also United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011) (same). Petitioner's summation related claim therefore fails to set forth any basis for habeas relief.[2]

In his amended petition, Petitioner raised two additional claims of ineffective assistance – first, that counsel failed to properly prepare Petitioner for trial, and that counsel failed to file a motion to sever his trial from that of his co-defendants, both claims for which Petitioner has presented no elaboration, and for which Petitioner has failed to present any allegations of specific prejudice. In their answer, Respondents argued both claims were unexhausted as Petitioner failed to raise them on appeal from the denial of his post-conviction relief petition. In turn, Petitioner states in his reply that he seeks to raise only exhausted claims, and discusses only the two exhausted ineffective assistance claims discussed above. It thus appears that Petitioner wished to withdraw the two unexhausted claims – his severance and trial preparation claims – and proceed only on his exhausted claims. To the extent that Petitioner did not wish to withdraw these claims, this Court can and does deny both claims on the merits notwithstanding the lack of exhaustion pursuant to 28 U.S.C. § 2254(b) as Petitioner has failed in any way to show how he was prejudiced, how his trial would have been different, or why a motion for a severance would have been granted or would have affected the outcome of trial had it been granted in a case where no defendant sought to blame the others for the robbery in question. Petitioner has thus failed to present any factual allegations

---

[2] In his reply brief, Petitioner argues that, even if his claims regarding summation, his right to testify, and the identification hearing do not present a basis for habeas relief individually, when considered together they are sufficiently prejudicial to warrant a new trial. Petitioner's claims, however, fare no better considered in the aggregate than they do individually. As all of Petitioner's claims are without merit individually or when considered together, Petitioner is not entitled to habeas relief.

as to prejudice, and his remaining two ineffective assistance claims are therefore patently insufficient to warrant habeas relief. *Palmer*, 592 F.3d at 395. Thus, to the extent that those claims have not been withdrawn, they are denied as meritless, and Petitioner's amended habeas petition is denied.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of a state court proceeding unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). As all of Petitioner's claims are clearly without merit for the reasons discussed in this opinion, he has failed to make a substantial showing of the denial of a constitutional right, and Petitioner is therefore denied a certificate of appealability.

### IV. CONCLUSION

For the reasons set forth above, Petitioner's amended habeas petition (ECF No. 7) is DENIED, and Petitioner is DENIED a certificate of appealability. An appropriate order follows.

                                           ___s/ Stanley R. Chesler_____
                                           Hon. Stanley R. Chesler,
                                           United States District Judge